# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| ENTERPRISE FLEET MANAGEMENT, INC. | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | |
| WALTER BRYAN GUINN | ) ) | Case No. 18-cv-215 |
| Serve At: | ) ) | **JURY TRIAL DEMANDED** |
| 3962 Aeries Way Virginia Beach, VA 23455 | ) ) ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT

Comes now Plaintiff Enterprise Fleet Management, Inc. ("Enterprise") and for its Verified Complaint ("Complaint") against Defendant Walter Bryan Guinn ("Guinn") states as follows:

## INTRODUCTION

1. This action arises out of Guinn's misappropriation of Enterprise's confidential, competitively-valuable and trade secret information. Guinn is a former employee of Enterprise, who voluntarily resigned his employment. Enterprise recently discovered that Guinn improperly e-mailed highly confidential, competitively-valuable and trade secret information pertaining to Enterprise's business to his personal e-mail address. Guinn e-mailed most of the confidential documents in his last hours as an Enterprise employee, sending approximately forty-three e-mails carrying roughly seventy-one attachments containing Enterprise's confidential,

competitively-valuable and trade secret information in this brief window. Enterprise also discovered that Guinn e-mailed a photograph of a prospective client's tax document to himself the day before he resigned. Guinn then e-mailed this prospective client and stated that he would provide a quote within the next week. Moreover, Enterprise recently discovered that Guinn is working for Enterprise's direct competitor, Mike Albert Fleet Solutions ("MAFS").

2. Guinn's misconduct constitutes a breach of contract. In addition, Guinn's misconduct violates the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. §§ 417.450, *et. seq.* ("MUTSA"), the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.* ("DTSA"), the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), and the Missouri computer tampering statutes, Mo. Rev. Stat. §§ 537.525 and 569.095, *et. seq.* ("MCTS"). Guinn also breached his common law duty of loyalty to Enterprise. Guinn had no legitimate need for the highly confidential, competitively-valuable and trade secret information he sent to his personal e-mail account in his final hours at Enterprise. Nor did he have any legitimate reason to access, download and/or copy Enterprise's confidential, proprietary, trade secret information. He improperly took this information, on information and belief, so he could use it to unfairly compete with Enterprise in connection with his new employment with MAFS.

3. In order to protect its confidential, competitively-valuable and trade secret information and put an end to the irreparable harm that Enterprise has suffered and/or will continue to suffer as a result of Guinn's unlawful conduct, Enterprise seeks injunctive relief enjoining Guinn from working for MAFS in a sales position, or otherwise being involved in MAFS's vehicle leasing business or operations, and/or using or disclosing, or otherwise misappropriating its confidential, competitively-valuable and trade secret information, as well as an award of compensatory damages, punitive damages, and attorney fees and costs.

## PARTIES, JURISDICTION AND VENUE

4. Plaintiff Enterprise is a Missouri corporation with its headquarters and principal place of business in St. Louis County, Missouri.

5. Defendant Guinn, on information and belief, is a citizen of the State of Virginia, who resides at 3962 Aeries Way, Virginia Beach, VA 23455.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over Guinn because Guinn signed an employment agreement with a Missouri company, travelled to Missouri for training related to his employment, and sent Enterprise's trade secrets and other confidential information through a server located in Weldon Springs, St. Charles County, Missouri.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the conduct giving rise to the claims herein occurred in this judicial district, and substantial injury to Enterprise occurred in this judicial district. On information and belief, the confidential and trade secret information Guinn improperly e-mailed, accessed, downloaded, copied and/or took from Enterprise was e-mailed, accessed, downloaded, copied and/or taken from Enterprise's servers and databases located in the State of Missouri, and the impact from Guinn's misconduct is being and will be felt directly in the State of Missouri, where Enterprise is headquartered.

## GENERAL ALLEGATIONS

### Guinn's Employment With Enterprise

9. Enterprise is a fleet management company that uses its specially developed processes and programs to manage vehicle maintenance, telematics, and financing for

3

businesses nationwide. It is headquartered in St. Louis County, Missouri

10.     Guinn began his career with and Enterprise affiliate in or around February 2002 as a Management Trainee. In the years that followed he was promoted several times, and in or around December 2006 was promoted to Area Manager. Guinn resigned as Area Manager in or around July 2008. In November 2015, Guinn returned to Enterprise, now as an Account Executive – a position he held until he again resigned in December 2017.

11.     As an Account Executive, Guinn was intimately involved in and had direct and significant responsibility for soliciting new fleet business for Enterprise. His duties and responsibilities included developing contacts, pursuing leads, and closing sales in the mid-Atlantic region. He was tasked with achieving sales goals through referrals, marketing, and sales presentations which demonstrated the value of Enterprise's fleet management services. Guinn spent a substantial portion of his time outside of the office to develop these relationships for Enterprise and was tasked with upholding Enterprise standards for honesty and integrity in these interactions.

12.     Guinn was given access to detailed, proprietary information about Enterprise's clients, business, operations, systems and processes. He was also involved in competitively-sensitive negotiations with clients, and had access to proprietary information regarding Enterprise's agreements with customers.

13.     This information is both highly-confidential and competitively-valuable, and Enterprise takes reasonable measures to protect it from authorized use or disclosure. Multiple layers of password protection, including two-factor authentication systems, are used to secure Enterprise's confidential information. Enterprise limits the number of individuals who have access to the computer systems where the information is stored, requires unique user ids and

passwords, and limits the rights of certain users to view or edit data. In addition, Enterprise's corporate headquarters and branch locations are secured by locked doors, and confidential information is stored in secured offices that are not generally accessible.

14. Guinn e-mailed this information in contravention of his signed "Non-Solicitation Agreement," which provides, in pertinent part, as follows:

> **1. Non-Solicitation.** The Employee acknowledges that he or she will acquire considerable knowledge about, and expertise in, certain areas of Enterprise's business and that he or she will have knowledge and contact with, customers and suppliers of Enterprise, its affiliated or related companies. The Employee further acknowledges that he or she may well be able to utilize such knowledge and expertise, following termination of his or her service with Enterprise, to the serious detriment of Enterprise in the event that the Employee should solicit business from customers of Enterprise or its affiliated or related companies. Accordingly, the Employee agrees that:
>
> (a) **Non-Solicitation of Customers.** He or she will not, for a period of two (2) years after termination of his or her employment, directly or indirectly, approach any customer or business partner of Enterprise its affiliated or related companies, with whom Employee had any contact during his or her employment with Enterprise, for the purpose of providing services substantially similar to the services provided by Enterprise, its affiliated or related companies.
> …
> (c) **Non-Disclosure of Confidential Information.** He or she acknowledges that during the term of his or her employment confidential, proprietary information and/or trade secrets will have been disclosed to him or her. Employee agrees not to disclose such information to any third party for any reason whatsoever.

15. Enterprise also has express company policies that restrict the accessibility, use and disclosure of its confidential information. For instance, Enterprise's Personnel Policies Summary provides, in pertinent part, as follows:

> Highly confidential and confidential information, including but not limited to methods of operation, customer lists, customers' personal information, employees' personal information, referral sources and trade secrets must be protected with appropriate safeguards. This applies to all locations where information is stored, including company network

systems and drives, company and personally owned computing equipment and mobile devices, and cloud storage. Current and former employees may not use customer lists to contact or solicit customers for any reason. Furthermore, the retention and use of proprietary information by a terminated employee may be detrimental and injurious to the company. Therefore, upon termination, all employees must promptly return such information.

Computer-related access codes and passwords are confidential and should not be shared with others. Employees must take appropriate precautions to secure their computers and portable and mobile devices when not in use by locking or logging off the computer terminals and physically securing mobile devices in locked cabinets or storage. The company prohibits unauthorized access to its technology systems and facilities; unauthorized use of cameras, camera phones, image, sound, and video recorders and any other monitoring devices; or computer hacking of any kind.

The company is committed to protecting the privacy of customers' and employees' personal information, including but not limited to their credit card numbers, driver's license numbers, Social Security numbers, national identification numbers, personal account numbers and contact information. All employees whose job responsibilities include accessing, receiving or using customers' or employee's personal information are expected to protect the confidentiality of such information. Customers' or employees' personal information should only be disclosed as necessary to perform one's job responsibilities. Employees who fail to protect the confidentiality of customers' or employees' personal information will face disciplinary action, up to and including termination.
…
Failure to comply with this policy will result in the appropriate disciplinary and legal action, as deemed suitable by the company.

16. As an employee of Enterprise, Guinn was expected to abide by the terms of Enterprise's Personnel Policies Summary. On October 27, 2015, Guinn acknowledged and accepted the terms of Enterprise's Personnel Policies Summary.  (See Exhibit C to the Hughes Decl., Guinn's Acknowledgement of the Business Ethics Guide and Personnel Policies Summary).

17. Guinn e-mail himself a copy of the Enterprise Personnel Policies Summary on the morning of his resignation. (See Exhibit A to the Hughes Decl., Personnel Policies Summary

6

in Guinn's possession).

**Guinn's Resignation and Improper E-mailing, Accessing, Downloading and/or Copying of Enterprise's Confidential, Competitively-Valuable and Trade Secret Information**

18. On November 29, 2017, Guinn sent himself two e-mails containing the corporate balance sheets of a prospective customer of Enterprise.

19. On December 4, 2017, the day before he would resign from Enterprise, Guinn e-mailed photographs of the same prospective customer's tax documents to his personal e-mail address. Guinn then e-mailed the prospective customer, saying he would provide quotes later that week.

20. On December 5, 2017, the day he resigned, Guinn began an extensive raid on Enterprise's confidential information. Between 6:26 AM and 8:55 AM, Guinn sent forty-one e-mails to his personal e-mail address. On information and belief, the e-mails each had at least one attachment and some had as many as fifteen attachments.

21. At 10:51 AM, Guinn resigned from Enterprise by emailing Kevin Hughes, stating that we would turn in his company computer "in the morning." Guinn did not state where he would be employed next, but he was mulling his employment options and stated that he had "several opportunities."

22. Rather than ceasing use of his Enterprise computer and security credentials, Guinn forwarded another e-mail to his personal e-mail address at 1:18 PM. The email contacted the contact information for the President of a prospective Enterprise client.

23. At 3:09 PM, Guinn then e-mailed the prospective customer whose corporate balance sheets and tax documents that he had previously forwarded to his personal email address. In the email, Guinn requested that the prospective customer call his cell phone number, and provided a phone number.

7

24. The e-mail attachments that Guinn forwarded to his personal e-mail address contained, among other confidential Enterprise documents, top customer lists, top prospect lists, pricing information, fleet cost analysis documents, and information concerning specific vehicles, including vehicle identification numbers, vehicle mileage and value, and estimated maintenance costs. It would be very valuable to a competitor, such as MAFS.

25. Guinn had no legitimate reason to e-mail this confidential, competitively-valuable, trade secret information to his personal e-mail account. On information and belief, he sent this information to himself – in his final hours as an Enterprise employee – for the sole purpose of using it to help him and his new employer, MAFS, unfairly compete with Enterprise.

26. On or about January 15, 2018, Enterprise learned that Guinn updated his employment information on LinkedIn, listing his new employer as MAFS, a direct competitor of Enterprise. Guinn's LinkedIn profile states that he is a Business Development Manager. Upon information and belief, Guinn's sales territory for MAFS is substantially the same as the territory he covered for Enterprise. This area includes Maryland, Virginia, and the greater Baltimore and Washington, D.C., metropolitan areas.

27. Upon learning that Guinn started at MAFS, and considering Guinn's executed Non-Solicitation Agreement with Enterprise, Enterprise initiated a review of Guinn's company e-mail account for disclosures. Enterprise discovered that Guinn had engaged in systematic and extensive raid on Enterprise's confidential information.

28. As set forth in Enterprise's Personnel Policies Summary, upon termination, Guinn was supposed to return Enterprise's confidential information, including customer lists and customers' personal information. Guinn did not, however, return any of the documents he e-mailed to himself on the final day of his employment, the photograph of the prospective client's

8

tax document he sent a day earlier, or any other Enterprise confidential information, when left the Company.

## COUNT I

### Breach of Contract – Non-Solicitation Agreement

29.     Enterprise realleges and incorporates herein by reference as if fully set forth herein the allegations of Paragraphs 1-28 above.

30.     Enterprise and Guinn entered into a written Non-Solicitation Agreement whereby Guinn agreed not use knowledge gained by virtue of his employment relationship with Enterprise to solicit Enterprise's customers upon his departure from the company.

31.     Guinn acknowledged that during his employment with Enterprise he would have access to Enterprise's confidential, proprietary and trade secret information. He agreed not to disclose such information to any third party for any reason whatsoever.

32.     Guinn also agreed not to directly or indirectly approach any customer of Enterprise, with whom Guinn had contact during his employment, for the purpose of providing services substantially similar to the services provided by Enterprise for a period of two years.

33.     Enterprise performed its obligations under the Agreement by employing Guinn.

34.     Guinn breached the Agreement by disclosing Enterprise's confidential, proprietary and trade secret information. Upon information and belief, Guinn accessed, downloaded, and e-mailed the forty-three e-mails and seventy-one attachments containing Enterprise's confidential, proprietary and trade secret information – in the final hours of his last day at Enterprise – for the purpose of disclosing this information to his future employer, MAFS.

35.     Guinn also took a sales position with MAFS, a direct competitor of Enterprise. MAFS provides services substantially similar to the services provided by Enterprise. Upon

9

information and belief, Guinn improperly accessed, downloaded, and e-mailed the forty-three e-mails and seventy-one attachments containing Enterprise's confidential, proprietary and trade secret information – in the final hours of his last day at Enterprise – for the purpose of approaching Enterprise's customers and soliciting business away from Enterprise as an employee of MAFS. Moreover, just one day before he resigned, Guinn contacted an Enterprise prospect, e-mailed a photograph of a prospective client's tax document to himself, and promised to contact that prospect within a week's time.

36. As a result of these breaches of contract, Enterprise has suffered and will, unless Guinn is enjoined by this Court, continue to suffer substantial injury, including irreparable harm, and damages, in the form of loss of sales, fees, revenue and profits (including but not limited to ancillary revenue and profits) which Enterprise would have made but for the unlawful conduct of Guinn as alleged herein. In addition to or as an alternative to these damages, Enterprise has suffered losses related to the diminution in the value of its business arising out of these breaches.

37. Enterprise has no adequate legal remedy for the future disclosure by Guinn of its confidential, proprietary and trade secret information to persons or entities without Enterprise's authorization, in breach of the Agreement.

WHEREFORE, Enterprise prays that judgment be entered in its favor and against Guinn on Count I of the Complaint and that Enterprise be awarded compensatory damages based upon the evidence to be presented at trial, costs, and such other and further relief as the Court deems appropriate and just.

## COUNT II

**Misappropriation of Trade Secrets Under the Missouri Uniform Trade Secrets Act**

38. Enterprise realleges and incorporates herein by reference as if fully set forth

herein the allegations of Paragraphs 1-37 above.

39. Guinn's conduct described above constitutes a misappropriation of trade secrets under the MUTSA.

40. The information of Enterprise that Guinn improperly e-mailed to his personal e-mail address and/or downloaded, copied and/or took in the days leading up to his resignation included information that derives economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure and use. Such information is the subject of efforts by Enterprise that are reasonable under the circumstances to maintain its secrecy.

41. Guinn used improper means to improperly acquire and take Enterprise's trade secret information. In short, Guinn e-mailed to his personal e-mail address, and/or downloaded, copied and took such information when, on information and belief, he was planning to join a direct competitor. Guinn's surreptitious conduct breached his duty to maintain the secrecy of Enterprise's trade secret information, violated Section 569.095 of the Missouri Revised Statutes, violated the Computer Fraud and Abuse Act, and, more generally, constitutes espionage through electronic or other means as set forth in Mo. Rev. Stat. § 417.453(1).

42. Guinn's misappropriation of Enterprise's trade secret information has damaged and harmed, and is continuing to damage and harm, Enterprise. Enterprise cannot be fully or adequately compensated through monetary damages for the irreparable harm and damage caused by Guinn's misappropriation of its trade secret information.

43. Guinn's misappropriation of Enterprise's trade secret information is likely to continue unless he is temporarily, preliminarily and permanently enjoined from keeping such information and from working for MAFS.

44. Guinn's misappropriation of Enterprise's trade secret information is outrageous because of Guinn's evil motive and/or reckless disregard of Enterprise's rights. He acted without regard for Enterprise's rights, knowing injury would probably follow, and his systematic and extensive disclosure of Enterprise's confidential information constitutes a calculated attempt to undermine Enterprise while an employment relationship still existed.

WHEREFORE, Enterprise prays that judgment be entered in its favor and against Guinn on Count II of the Complaint, and that:

(a) Guinn be temporarily, preliminarily and permanently enjoined from keeping, using or disclosing Enterprise's trade secret information;

(b) Guinn be temporarily, preliminarily and permanently enjoined from working for MAFS in a sales position, or otherwise being involved in MAFS's fleet leasing business or operations;

(c) Guinn be ordered to return all of Enterprise's trade secret information in his possession or under his custody or control, regardless of the medium in which such information may be stored or preserved;

(d) Enterprise be awarded compensatory and other damages recoverable under Mo. Rev. Stat. § 417.457, based upon the evidence to be presented at trial;

(e) Enterprise be awarded punitive damages in accordance with the MUTSA;

(f) Enterprise be awarded its costs and expenses; and

(g) Enterprise be awarded such other and further relief as the Court deems appropriate and just.

## COUNT III

### Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836

45. Enterprise realleges and incorporates herein by reference as if fully set forth herein the allegations of Paragraphs 1-44 above.

46. Guinn's conduct described above violates the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*

47. The information of Enterprise that Guinn improperly e-mailed to his personal e-mail address, downloaded, copied and/or took in the days leading up to his resignation included information that derives economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure and use. Such information is the subject of efforts by Enterprise that are reasonable under the circumstances to maintain its secrecy.

48. Guinn's unauthorized disclosure of Enterprise's confidential information constitutes misappropriation of Enterprise's trade secrets. 18 U.S.C. § 1839(5)(B)(ii)(II).

49. At the time Guinn e-mailed the confidential documents to himself, he knew and had reason to know that his knowledge of the trade secret information was acquired under circumstances giving rise to a duty to maintain its secrecy. He only acquired the confidential information through his close employment relationship with Enterprise. He also knew and had reason to know, as evidenced by his signed and executed Non-Solicitation Agreement and acknowledgement of Enterprise's Personnel Policies Summary, that he had a duty to maintain secrecy. Enterprise did not consent to Guinn's extensive and systematic disclosure of its trade secret information.

50. Guinn's misappropriation of Enterprise's trade secret information has damaged

and harmed, and is continuing to damage and harm, Enterprise. Enterprise cannot be fully or adequately compensated through monetary damages for the irreparable harm and damage caused by Guinn's misappropriation of its trade secret information.

51.     Guinn's misappropriation of Enterprise's trade secret information is likely to continue unless he is temporarily, preliminarily and permanently enjoined from keeping such information and from working for MAFS.

52.     Guinn's misappropriation of Enterprise's trade secret information was willful and malicious. He acted without regard for Enterprise's rights, knowing injury would probably follow, and his systematic and extensive disclosure of Enterprise's confidential information constitutes a calculated attempt to undermine Enterprise while an employment relationship still existed.

WHEREFORE, Enterprise prays that judgment be entered in its favor and against Guinn on Count III of the Complaint, and that:

    (a) Guinn be temporarily, preliminarily and permanently enjoined from keeping, using or disclosing Enterprise's trade secret information;

    (b) Guinn be temporarily, preliminarily and permanently enjoined from working for MAFS in a sales position, or otherwise being involved in MAFS's fleet leasing business or operations;

    (c) Guinn be ordered to return all of Enterprise's trade secret information in his possession or under his custody or control, regardless of the medium in which such information may be stored or preserved;

    (d) Enterprise be awarded compensatory and other damages recoverable under 18 U.S.C. § 1836(b)(3)(B), based upon the evidence to be presented at trial;

(e) Enterprise be awarded exemplary damages in accordance with U.S.C. § 1836(b)(3)(C);

(f) Enterprise be awarded its costs and expenses; and

(g) Enterprise be awarded such other and further relief as the Court deems appropriate and just.

## COUNT IV

### Violation of the CFAA, 18 U.S.C. § 1030

53. Enterprise realleges and incorporates herein by reference as if fully set forth herein the allegations of Paragraphs 1-52 above.

54. Guinn's conduct described above violates the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Guinn's conduct, at a minimum, violates 18 U.S.C. § 1030(a)(2)(C).

55. Guinn's company computer, as well Enterprise's servers, databases and/or other electronic computing and/or storage systems, are "computers" and "protected computers" under 18 U.S.C. § 1030(e)(1) and (2).

56. Guinn was not authorized to access his Enterprise computer for the purposes of e-mailing Enterprise's confidential, proprietary, competitively-valuable and/or trade secret information to help him and/or MAFS compete with Enterprise after he joined MAFS. Guinn also was not authorized to access Enterprise's servers, databases and/or other electronic computing and/or storage systems, in order to access, review, download, copy and/or transfer any such information for such purposes.

57. Guinn acted without authorization and/or in excess of his authorization by accessing his Enterprise computer in order to e-mail Enterprise's confidential, proprietary,

15

competitively-valuable and/or trade secret information to himself to help him and/or MAFS compete with Enterprise after he joined MAFS. Guinn also acted without authorization and/or in excess of his authorization by accessing Enterprise's servers, databases and/or other electronic computing and/or storage systems, in order to review, download, copy and/or transfer any such information for such purposes.

58.     Guinn's conduct described above has caused Enterprise damage and loss. Enterprise's damage and loss include, but are not limited to, (a) expenses, fees and costs incurred to uncover and determine the extent of Guinn's computer-related misconduct; and (b) damages and/or losses in an amount not yet determined resulting from the impairment of the integrity of the data and/or information pertaining to Guinn's computer-related misconduct. Such damages and/or losses are in excess of $5,000.

59.     Enterprise is entitled, among other things, to recover compensatory damages and injunctive relief under 18 U.S.C. § 1030(g) as the result of Guinn's violations of the CFAA.

WHEREFORE, Enterprise prays that judgment be entered in its favor and against Guinn on Count IV of the Complaint, and that:

(a) Guinn be temporarily, preliminarily and permanently enjoined from retaining, using or disclosing the information that he obtained in violation of the CFAA;

(b) Guinn be ordered to return all data and/or supporting documentation that he obtained in violation of the CFAA;

(c) Enterprise be awarded compensatory damages recoverable under the CFAA;

(d) Enterprise be awarded its costs, expenses and reasonable attorney fees;

(e) Enterprise be awarded such other and further relief as the Court deems

appropriate and just.

## COUNT V

### Missouri Computer Tampering Statutes

60. Enterprise realleges and incorporates herein by reference as if fully set forth herein the allegations of Paragraphs 1-59 above.

61. Section 537.525 of the Missouri Revised Statutes provides as follows:

1. In addition to any other civil remedy available, the owner or lessee of the computer system, computer network, computer program, computer service or data may bring a civil action against any person who violates sections 569.095 to 569.099, RSMo, for compensatory damages, including any expenditures reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, computer service, or data was not altered, damaged or deleted by the access.

2. In any action brought pursuant to this section, the court may award reasonable attorney's fees to a prevailing plaintiff.

62. Enterprise is both an owner and lessee under Section 537.525.

63. Guinn's conduct violates Section 569.095 of the Missouri Revised Statutes. Guinn knowingly and without authorization or without reasonable grounds to believe that he had such authorization, at minimum:

(a) took Enterprise's data and/or supporting documentation, residing or existing internal or external to Enterprise's computer, computer system and/or computer network, and/or

(b) retained data he knew or believes he obtained without authorization and/or without reasonable grounds to believe he had such authorization.

64. Enterprise has been damaged, and is continuing to be damaged, by Guinn's conduct in violation of Section 569.095.

WHEREFORE, Enterprise prays that judgment be entered in its favor and against Guinn

17

on Count V of the Complaint, and that:

    (a) Guinn be temporarily, preliminarily and permanently enjoined from retaining, using or disclosing data and/or supporting documentation that he obtained in violation of Section 569.095;

    (b) Guinn be ordered to return all data and/or supporting documentation that he obtained in violation of Section 569.095;

    (c) Enterprise be awarded compensatory damages recoverable under Section 537.525 of the Missouri Revised Statutes;

    (d) Enterprise be awarded its costs, expenses and reasonable attorney fees;

    (e) Enterprise be awarded such other and further relief as the Court deems appropriate and just.

## COUNT VI

### Breach of the Duty of Loyalty

65.    Enterprise realleges and incorporates herein by reference as if fully set forth herein the allegations of Paragraphs 1-64 above.

66.    While he was employed by Enterprise, Guinn was an agent of Enterprise and owed Enterprise a duty of loyalty.

67.    Guinn breached his duty of loyalty to Enterprise by improperly e-mailing to his personal e-mail account, and accessing, viewing, copying and/or downloading Enterprise's confidential and competitively-valuable information for the purposes of helping him unfairly compete against Enterprise.

68.    In addition, compiling and collecting this information for the benefit of a

competitor – whether it was to save time, money, or effort for the competitor – was competition (i.e. unfair competition) in and of itself. Guinn, in essence, was working to benefit MAFS while he was still employed by Enterprise, and his competitive misconduct for MAFS's benefit while he was still employed by Enterprise breached the duty of loyalty he owed to Enterprise.

69. Guinn's breaches of the duty of loyalty have damaged and harmed, and are continuing to damage and harm, Enterprise.

70. Guinn acted maliciously, recklessly and with reckless indifference of Enterprise's rights in breaching his duty of loyalty.

WHEREFORE, Enterprise prays that judgment be entered in its favor and against Guinn on Count VI of the Complaint, in and that Enterprise be awarded compensatory damages based upon the evidence to be presented at trial, punitive damages, costs, and such other and further relief as the Court deems appropriate and just.

Dated:  February 7, 2018                           Respectfully submitted,

GREENSFELDER, HEMKER & GALE, P.C.

By: /s/ James H. Ferrick, III
    James H. Ferrick, III, #45404
    e-mail: jhf@greensfelder.com
    Jasmine Y. McCormick, #66386
    e-mail: jmccormick@greensfelder.com
    Peter W. Mueller, #70262
    e-mail: pmueller@greensfelder.com
    10 South Broadway, Suite 2000
    St. Louis, MO  63102
    (314) 241-9090
    (314) 241-4245 (fax)

*Attorneys for Plaintiff Enterprise Fleet Management, Inc.*

I declare under penalty of perjury that the foregoing is true and correct. Executed within the United States on this 7 day of February, 2018.

_Kevin Hughes_
Kevin Hughes